# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-937


CALVIN RABALAIS AND MERION RABALAIS

VERSUS

LLOYD A. NASH, JR., ET AL.


**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 20023657-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Oswald A. Decuir, Judges.

**Thibodeaux, Chief Judge, concurs.**


**AFFIRMED IN PART, REVERSED IN PART.**

Larry Alan Stewart
Stafford, Stewart, & Potter
P. O. Box 1711
Alexandria, LA 71301
Telephone:  (318) 487-4910
Counsel for Defendants/Appellees:
State Farm Mutual Automobile Insurance Company
Avoyelles Glass of Bunkie
Earl Guillory

**Henry Dupont Heck Olinde, Jr.**
**James D. Prescott, III**
**Couhig Partners L.L.C.**
**One American Place, Suite 810**
**Baton Rouge, LA 70825**
**Telephone:  (225) 282-0650**
**Counsel for Defendants/Appellees:**
**Lloyd A. Nash, Jr.**
**City of Marksville through the Marksville City Fire Department**
**American Alternative Insurance Company**

**Brian M. Caubarreaux**
**Derrick G. Earles**
**Brian Caubarreaux & Associates**
**P. O. Box 129**
**Marksville, LA 71351**
**Telephone:  (318) 253-0900**
**Coursel for Plaintiffs/Appellants:**
**Calvin Rabalais and Merion Rabalais**

**SAUNDERS, Judge.**

The plaintiff, Calvin Rabalais, appeals an adverse judgment assessing 100% of the fault to him in a collision between his vehicle and a Marksville Fire Department vehicle which was returning to a fire still in progress.

We reverse the judgment rendered pursuant to a jury verdict.

## ISSUES

Did the jury commit manifest error in concluding that La.R.S. 32:24 concerning emergency vehicles applied to the facts of this case? Was the jury reasonable, or did it commit manifest error in assigning 100% fault against the plaintiff?

## FACTS

On June 12, 2002, Mr. Rabalais was attempting to make a left hand turn onto Louisiana Highway One in Marksville, Louisiana. Louisiana Highway One is a two lane, north-south highway with a general turning lane in between the two lanes of traffic. Mr. Rabalais was leaving the parking lot of an auto repair shop located on the west side of south-bound Highway One. Mr. Rabalais wanted to travel north, meaning that he had to cross the southbound lane of traffic, the turning lane, and then turn left into the northbound lane of Highway One. Approximately 60-90 minutes before Mr. Rabalais was attempting to make his lefthand turn, the Marksville Fire Department began fighting a fire at the Jen-Re Plastics Plant located on the west side of south-bound Highway One, approximately one-half mile south of the auto repair shop. The fire required the assistance of a number of neighboring fire departments as it was quite large, and the Marksville Fire Department was unable to control the blaze on its own. Due to the size of the fire, traffic on Highway One south bound was

mostly stopped, moving bumper to bumper at best.

Because the traffic was so congested on the southbound lane of Highway One directly in front of the auto repair shop, Mr. Rabalais' vision of traffic in the turning lane was obscured. Witnesses report that Mr. Rabalais pulled out into the stop-and-go traffic of the southbound lane, and continued to proceed forward without stopping before entering the center turning lane. Mr. Rabalais said that at the time his vehicle was entering the turning lane he was looking to his right in anticipation of his lefthand turn into the northbound lane of Highway One.

At the same time, defendant Captain Lloyd Nash of the Marksville Fire Department was traveling south in the turning lane of Highway One, returning to the Jen-Re Plastics Plant fire in a Marksville Fire Department pick-up truck. The truck was red, marked with the fire department name and logo, and had a bank of emergency lights on top of the cab. Almost all witnesses reported seeing the pick-up truck's emergency lights, and many reported hearing the truck's sirens. As Mr. Rabalais pulled out into the turning lane, Captain Nash struck Mr. Rabalais' vehicle directly behind the driver's door, resulting in serious injury to Mr. Rabalais.

Mr. Rabalais filed a petition for damages against Captain Nash, the City of Marksville through the Marksville Fire Department, and the fire department's insurance carrier. After a trial by jury, a verdict was rendered finding Mr. Rabalais to be 100% at fault for the accident. Mr. Rabalais filed a timely Motion for Judgment Notwithstanding the Verdict and/or Motion for New Trial. This combined motion

2

was denied by the trial court judge.

## LAW AND DISCUSSION

### Standard of Review

It is well established that an appellate court cannot overturn the factual findings of a trial court unless, after careful review of the record as a whole, the appellate court finds that the factual conclusions of the trier of fact were manifestly erroneous or clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La.1989). The appellate standard of review is both constitutionally based and jurisprudentially refined.

> This state's appellate review standard, which is constitutionally based and jurisprudentially driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Accordingly, appellate courts are charged with a duty to affirm the trial court's decision absent an error of law or a factual finding which is manifestly erroneous or clearly wrong.

*Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1992).

If there is conflict in the testimony, the appellate court cannot substitute its own judgment. The appellate court can only review the record as a whole to ensure that the judgment of the trial court was reasonable. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id.* at 882. (Citations omitted.)

> [I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

*Rosell, Id* at 844. (Citations omitted.)

3

## Applicability of La.R.S. 32:24

Mr. Rabalais argues that the jury was unreasonable in deciding that the emergency vehicle statute applied to Captain Nash because it is inapplicable upon the return from an emergency. If applicable, the emergency vehicle statute would afford Captain Nash the right to disregard certain vehicle operation and traffic rules while operating an emergency vehicle that is responding to a fire in progress. We find the statute to be inapplicable to the instant case, however, for different reasons. The statute, La.R.S. 32:24, reads as follows:

### § 24. Emergency vehicles; exceptions

A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.

B. The driver of an authorized emergency vehicle may:

(1) Park or stand, irrespective of the provisions of this Chapter;

(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;

(3) Exceed the maximum speed limits so long as he does not endanger life or property;

(4) Disregard regulations governing the direction of movement or turning in specified directions.

C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such

4

vehicle is making use of audible or visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.

D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

The question to be determined on appeal is whether there was credible evidence and testimony in the record such that it was reasonable for the jury to conclude that the statute was applicable to Captain Nash's actions in this case. It is well settled that a statute or law in derogation of a common or a natural right is *stricti juris*. *Refractory Construction, Inc. v. Cities Service Oil Co.*, 278 So.2d 510 (La.App. 3 Cir. 1973). In describing the principle of *stricti juris*, the Louisiana Supreme Court stated in *Monteville v. Terrebonne Parish Consolidated Government*, 567 So.2d 1097 (La.1990):

The rule that statutes in derogation of a natural or common right are to be strictly interpreted is now generally recognized as being a corollary of the rule that statues in derogation of the common law are to be interpreted strictly. The rile is so well settled that it must be presumed that the legislature acted with full knowledge of the strict interpretation of statutes of this nature.
. . .
For the purpose of this rule, "common law" should be understood to carry its broadest meaning, i.e., the existing body of law rather than the narrower definition of an ancient body of Anglo-American judge-made principles.

*Id*. at 1100.

The court in the *Monteville* case found that Recreational Use Statutes granted special

"immunities or advantages" to a certain class of people against the general public. *Id*. at 1101. It explained, "It is an established principle that legislative grants of such rights, powers, privileges, immunities or benefits as against the general public, as distinguished from a right against some other party, should be construed strictly against the claim of the grantee." *Id*.

Much like the recreational use statutes, La.R.S. 32:24 grants special privileges to drivers of emergency vehicles not granted to the general public. Therefore, it must be strictly construed. *Id*. The *Monteville* court stated, "[T]his rule is so well settled that it must be presumed that the legislature acted with full knowledge of the strict interpretation of statutes of this nature." *Id*. Further, La.Civ. Code art. 15 states, "When the language of the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."

The statute clearly provides that the driver of an authorized emergency vehicle may: 1) park or stand, irrespective traffic regulations; 2) proceed past a red or stop signal, but only after slowing down or stopping as necessary; 3) exceed the maximum speed limit, as long as life and property are not endangered; and 4) "disregard regulations governing the movement or turning in specified directions." La.R.S. 32:24. At the time of the collision, there was a large fire at the Jen-Re Plastics Plant, and Captain Nash was driving an authorized emergency vehicle en route to the scene of the fire. However, Captain Nash's actions are not covered by La.R.S. 32:24. He was not parking or standing, nor was he proceeding past a red or stop signal at the time of the accident. He did not exceed the speed limit. He did not drive the wrong

way down a one way street, nor did his actions involve turning. At the time of the collision, Captain Nash was driving down the center turn lane of a state highway, an exception not enumerated in La.R.S. 32:24. Because it must be strictly construed, the list of exceptions granted to drivers of authorized emergency automobiles is exclusive, not illustrative. See *Pellegrini v. Crellin,* 95-2654 (La.App. 4 Cir. 5/8/96), 674 So.2d 463, *writ denied,* 96-1592 (La. 6/27/97), 696 So.2d 991. Nowhere in the statute does it provide that the driver of an emergency vehicle may violate highway regulations and drive in the center turn lane. Therefore, Captain Nash's actions were not granted exception under La.R.S.32:24, and the statute is inapplicable in this case. We find that the jury was manifestly erroneous in applying La.R.S. 32:24 to Captain Nash's actions. Accordingly, we reverse the judgment of the jury in its application of the statute.

### DUTY-RISK ANALYSIS

In *Ferrel v. Fireman's Fund Ins. Co.*, 94-1252 (La. 2/20/95), 650 So.2d 742, 745, (citing *Rosell, Id.*), this court explained, "when the court of appeal finds that a reversible error . . . was made in the trial court, it is required, whenever possible, to redetermine the facts *de novo* from the entire record and render a judgment on the merits." In this case, the trial court committed reversible error by applying La.R.S. 32:24. Therefore, we must conduct a *de novo* review of the record and render a judgment on the merits.

Appellants argue that Captain Nash acted unreasonably under the circumstances and that his actions amounted to negligence. Louisiana courts utilize the duty-risk analysis to evaluate a party's alleged negligence. *Mathieu v. Imperial Toy Corp.*, 94-

0952 (La. 11/30/94), 646 So.2d 318. In employing the duty-risk analysis, a plaintiff must prove: (1)the defendant owed a duty of care to the plaintiff, (2) that requisite duty was breached by the defendant, (3) the conduct in question was the cause in fact of the harm or injury, and (4) the risk of the harm caused was within the scope of the protection afforded by the duty breached. *Id.* In order for a plaintiff to recover damages for negligence, the plaintiff must answer each of the four above inquiries in the affirmative. *Id.*

### DUTY, BREACH OF DUTY, & SCOPE OF RISK

In applying the duty-risk analysis, the court must determine that a duty exists and that the duty protects against the risk involved. The Louisiana Highway Regulatory Act provides uniform traffic regulations that "govern the operation of vehicles and pedestrians upon all highways within this state and other areas specifically set forth." La.R.S. 32:21. The Louisiana Highway Regulatory Act applies in this case, as the collision occurred on Highway One, a state highway. Contained in the Act is La.R.S. 32:82, which states in pertinent part:

> § 82. Driving on divided highways
> A. Whenever any highway has been divided into two roadways by a median, physical barrier, or clearly indicated dividing section so construed as to impede vehicular traffic, every vehicle shall be driven upon the right hand of the roadway and no vehicle shall be driven over, across or within the median, barrier or section, except through an approved opening or at a cross over or intersection established under authority of this Chapter.
>
> B. No vehicle shall cross the painted continuous centerline of any multiple lane highway, except for the purpose of making a turn.

Violation of a statute amounts to negligence *per se. Coleman v. Douglas Public Service,* 423 So.2d 1205 (La.App. 4 Cir. 1982), *writ denied,* 429 So.2d 153 (La.1983);

8

*Pierre v. Allstate Ins. Co.*, 257 La. 471, 242 So.2d 821 (La.1970). Defendants assert that Captain Nash's actions were granted exception under La.R.S. 32:24. However, as discussed earlier, we do not find La.R.S. 32:24 to be applicable in this case.

The Appellants' expert witness, Mr. Ronald Jones, testified as to the propriety of driving in the center turn lane of a highway. He stated that the center turn lane is not engineered for driving and that it is marked as a no passing lane.

In *Miller v. Keal*, 29,564 (La.App. 2 Cir. 5/7/97), 694 So.2d 569, *writ denied*, 97-1751 (La.10/13/97), 703 So.2d 620, the defendant was driving his car in the center turn lane when he struck the plaintiff. The plaintiff had been attempting to turn left across heavily backed-up traffic. As she entered the center turn lane, the defendant's car collided with hers. The defendant in the *Miller* case was cited with a violation of a city ordinance very similar to La.R.S. 32:82. The ordinance prohibited "driving over a 'divided space' between a divided roadway that is not open to traffic by appropriate marking." *Id*. at 571. We hold that Captain Nash was in violation of La.R.S. 32:82, as he was driving in the center lane of the divided highway intended for turning only.

A duty existed on the part of Captain Nash to follow the Highway Regulatory Act. Clearly, this duty was imposed to protect against the risk of collisions such as the one at issue in this case. Captain Nash breached this duty by failing to abide by La.R.S. 32:82 and driving in the center lane of Highway One.

## CAUSE IN FACT

The Louisiana Supreme Court expressed how a plaintiff may prove cause in fact in *St. Hill v. Tabor*, 542 So.2d 499 (La.1989). The court stated, "If the Plaintiff can show he probably would not have suffered damages, absent Defendant's conduct, he has [proved] cause in fact." *Id*. at 502, quoting *Gibson v. Faubion Truck Lines, Inc.*,

427 So.2d 68, 71 (La.App. 4 Cir. 1983). There is no question that but for Captain Nash driving in the center lane, the accident would not have occurred. We find that Captain Nash's actions were a cause in fact of the accident and the resulting injuries.

**INJURY**

Mr. Rabalais suffered serious injuries as a result of the automobile collision. He was knocked unconscious and sustained a concussion, bruises to his head and shoulders, and several lacerations. Ultimately, he was diagnosed with perched facets bilaterally with torn ligaments and instability at C5-6. Due to the seriousness of the injury, he had to undergo an emergency posterior cervical instrumented fusion at C5-6 with bone graft. Mr. Rabalais continues to suffer from permanent pain and stiffness in his cervical spine and his daily activities are limited as a result of his injuries.

**ALLOCATION OF FAULT**

Louisiana uses comparative fault, enumerated in La.Civ.Code art. 2323, to allocate fault among the parties. In this case, we find that both Captain Nash and Mr. Rabalais were at fault for the collision. At the time of the accident, Mr. Rabalais was making a left turn across traffic. He had a duty to ascertain that the turn could be made safely and without danger to oncoming traffic. *Washington Fire and Marine Ins. Co., v. Fireman's Ins. Co.*, 94 So. 2d 295 (La.1957); *Desormeaux v. Continental Ins. Co.*, 153 So. 2d 128 (La.App. 3 Cir. 1963). Several witnesses testified that Mr. Rabalais did not look to his left to ensure that the way was clear for him to enter the turning lane.

> It is well settled that a motorist who attempts to make a left turn from a public highway is required to ascertain in advance that the way is clear and that the turn can be made safely and without endangering overtaking or oncoming traffic. Failure to do so constitutes negligence.

10

*Cassity v. Williams*, 373 So.2d 586, 591 (La.App. 3 Cir. 1979).

However, under Louisiana's comparative fault scheme, a plaintiff's negligence does not defeat his cause of action; his recovery will be reduced by the amount of fault allocated to him by the court. Therefore, although Mr. Rabalais' actions constituted negligence, he may still have an action against Captain Nash for his percentage of fault. As discussed earlier, we have determined that Captain Nash's actions also constituted negligence. He clearly violated La.R.S. 32:82 by driving in the center turn lane of a public highway.

Having determined that both Captain Nash and Mr. Rabalais were negligent, we must allocate fault between them. The Louisiana Supreme Court set out the factors to be considered when allocating fault among the parties in *Watson v. State Farm Fire and Casualty Ins. Co.*, 469 So.2d 967 (La.1985). The factors that may influence the amount of fault allocated include: (1) whether the conduct resulted from an inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. *Watson*, 469 So.2d at 974.

As to the first factor, Captain Nash testified that he never even considered that someone would pull into the center turn lane, although he had seen cars perform this maneuver many times in the past. Certainly it was forseeable that a car would enter the turn lane. Mr. Rabalais proceeded blindly into the center turn lane, relying on others to "wave" him on. Both Captain Nash and Mr. Rabalais should have been aware of the dangerous nature of their actions. As to the second factor, Captain

11

Nash's actions put the drivers on Highway One at risk. He not only endangered those drivers who would potentially enter the turning lane, but also others in the vicinity of the collision. Mr. Rabalais' actions created a risk for those around him and for any oncoming traffic by turning left across traffic without first ensuring that it was safe for him to proceed. As to the third, fourth and fifth factors, Captain Nash was returning to the scene of the fire. However, at the time of the collision, the urgency was diminished. The Marksville Fire Department had responded to the initial call and was on the scene, attempting to control the blaze. Several other fire departments had also responded to the call to assist them. Nash, on his third trip back to the scene of the fire, was escorting a pumper truck back to the scene of the fire in case the fire department had to draft water out of the pond. There is some dispute as to why the truck was brought back. Appellees argue that the truck was also brought back because it contained extra air packs and monitors that may have been needed by the firefighters. However, it is clear that the pumper truck was being brought in as a safety precaution.

In applying the *Watson* factors to the instant case, we conclude that an equal allocation of fault to Captain Nash and Mr. Rabalais is appropriate. Accordingly, we reverse the decision of the trial court in allocating 100% of fault to Mr. Rabalais, and we reallocate 50% of fault to Captain Nash and 50% of fault to Mr. Rabalais.

**DAMAGES**

As a result of the accident, Mr. Rabalais sustained serious injuries. Upon impact, Mr. Rabalais was thrown to the passenger side of his vehicle and was knocked unconscious. He was taken to the hospital where he was kept overnight for observation. While at the hospital, a cat scan and an x-ray were taken, and Mr. Rabalais was diagnosed with a bruised neck. After two weeks, the pain in his neck

12

had become so unbearable that he went to the emergency room at St. Francis Cabrini Hospital where he was again told that his neck was badly bruised. After another week of continuous pain, Mr. Rabalais went to see Dr. Blanda at the Lafayette Bone and Joint Clinic. Dr. Blanda took four x-rays of Mr. Rabalais' neck area and determined that a cervical fusion was necessary. Mr. Rabalais was admitted to the hospital that night and underwent surgical cervical fusion the following day. Due to his injury and resulting surgery, he spent four days in the hospital and incurred $35,335.05 in medical expenses.

Although Mr. Rabalais' surgery was a success, he continues to suffer from the injuries incurred as a result of the accident. Mr. Rabalais has experienced a significant loss of range of motion, and experiences stiffness in his neck. As a result, he can no longer drive. His other daily activities have been affected as well. He can no longer garden nor can he fish as he used to. Mr. Rabalais also claims that he has suffered from depression due to the effects of the injury on his daily activities.

After a thorough review of the record, we conclude that Mr. Rabalais' injuries warrant an award of $125,000.00. However, because we have found Mr. Rabalais to be 50% at fault for the accident, his recovery is reduced to $62,500.00. Further, we award Mr. Rabalais 50% of the $35,335.05 of his past medical expenses.

Additionally, Mrs. Merion Rabalais asserts a loss of consortium claim in this case. "The compensable elements of a damage in a loss of consortium claim are loss of society, sex, service, and support. 'Society' is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. 'Service' is the uncompensated work around the house or educational help with the children which will, as a result of the injury, have to be obtained from another source and at some price." *Roberts v. State*, 00-778 (La.App. 3 Cir. 11/2/00), 776 So.2d 519, *writ denied* 00-3307 (La. 2/2/01), 784 So.2d 8. Mr. and Mrs. Rabalais

13

have been married for fifty-two years. Mrs. Rabalais has been struggling with blindness for several years. Therefore, before the accident, Mr. Rabalais took care of most of the house work including the cooking, the cleaning and all business matters such as paying the bills. When the accident occurred, Mrs. Rabalais was forced to use her sick leave and vacation time from work in order to care for her husband and assist him in daily activities such as dressing and bathing. Mrs. Rabalais has clearly experienced a loss of service as a result of her husband's injury. Because of her sight impairment, she depended on Mr. Rabalais to complete the chores in and around the house and to assist her with every day tasks. Mr. Rabalais can no longer aid her in the same capacity; instead it is she who must aid him. Because of his pain and his inability to rotate his neck, Mr. Rabalais cannot drive or even ride a riding lawn mower to mow their one and one-half acre lot. Mrs. Rabalais has also testified that she and her husband's relationship has somewhat diminished since the accident due to his suffering.

After a *de novo* review considering the nature of Mr. Rabalais' injuries and the effect they have had on his relationship with his wife, we award Mrs. Rabalais $25,000.00 in loss of consortium damages which we reduce by 50% due to the comparative fault of Mr. Rabalais.

## CONCLUSION

The judgment of a jury as to the relative fault of each party cannot be overturned on appeal absent a finding of manifest error or that the jury was clearly wrong. There were no facts and evidence in the record to support the jury's finding that the applicability of the Louisiana Emergency Vehicle Statute, La.R.S. 32:24, was appropriate. Accordingly, finding manifest error, we reverse the decision of the trial court and allocate 50% of the fault to Captain Nash and the Marksville Fire Department and 50% of the fault to Mr. Rabalais.

14

Accordingly, we award Mr. Rabalais $62,500.00 in general damages and $17,667.53 in past medical expenses. Further, we award Mrs. Merion Rabalais $12,500.00 for loss of consortium.

Appellee, Captain Lloyd Nash and the Marksville Fire Department, are cast with all costs of this appeal.

**AFFIRMED IN PART, REVERSED IN PART**.