691 So.2d 1265 (1997)
Lollian BROUSSARD, PlaintiffsAppellantsAppellees,
v.
J.C. ROMERO, et al., DefendantsAppelleesAppellants.
No. 96-973.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1997.
Writ Denied April 25, 1997.
*1267 Roger Chadwick Edwards, Jr., Plaistow, NH, Michael J. Juneau, Lafayette, for Lollian Broussard.
Barry L. Domingue, Lafayette, for J.C. Romero et al.
Before SAUNDERS, PETERS and AMY, JJ.
SAUNDERS, Judge.
Plaintiff, Lollian Broussard, and defendant, J.C. Romero, are sister and brother. Initially a dispute arose between the two siblings when their father died. Unfortunately, the relationship between the two intensified so that for a number of years plaintiff clandestinely visited her mother without the defendant's knowledge. Years later, in December of 1992, plaintiff's mother passed away, and on New Year's Day 1993, Mrs. Broussard was notified by her sister, Mrs. Gloria Veronie, that her brother, along with his family, had begun to remove some of the furnishings from the family home.
Soon thereafter, Mrs. Broussard arrived at the scene, parked across the street in front of Mr. Raymond Flory's home and began taking photographs of the items being removed by her brother.
It is undisputed that an altercation broke out between the two; however, the parties contest the events that culminated thereafter. While the parties contest the factual events that occurred, it is evident from the record that Mrs. Broussard sustained several injuries on the day of the incident.
According to the plaintiff, she was in the process of taking a photograph when the defendant approached her from her blind side and grabbed the camera out of her hand. Because the camera was attached to her by the wrist strap, the thrust by her brother resulted in her being pulled to the ground. While on the ground, the defendant stomped on plaintiff's hand and kicked her repeatedly as she tried to get up. After the beating, the defendant allegedly cursed her and left her on the ground.
The defendant's version as to what occurred the day of the altercation varies greatly. The defendant stated that as he was loading items into the trunk of his car, he saw a flash of light from a camera and *1268 then recognized the person holding the camera as his sister. Mrs. Broussard then fell to the ground as she thrust the camera at him, which he claims hit him on the hand.
While the parties dispute what occurred during the altercation, it is clear that shortly after the incident, Mrs. Broussard went to her sister's home where police took statements about the incident and Mrs. Broussard was transported by ambulance to Abbeville General Hospital.
Plaintiffs, Mrs. And Mr. Broussard filed the instant suit on May 25, 1993, against the defendants, Mr. Romero and his insurer. The trial court rendered a judgment in conformity with the jury verdict on October 20, 1995, awarding $17,586.25 for past medical expenses and $43,160.00 for loss of earning capacity, to be reduced by 50% comparative fault on the part of plaintiff, Mrs. Broussard. On October 24, 1995, counsel for plaintiff filed a motion for new trial and/or JNOV, requesting that the court enter an award of general damages and grant a new trial upon the question of comparative fault for an intentional tort. The trial court rendered judgment on March 11, 1996, awarding the following: $85,000.00 for general damages; $17,586.25 for past medical expenses; $43,160.00 for loss of earning capacity; and $10,000.00 for loss of consortium, together with legal interest from the date of demand until paid, subject to a reduction of 50% for the comparative fault on the part of the plaintiff, Mrs. Broussard.
Plaintiff appeals urging the following assignments of error:
1. The trial court erred by giving a jury charge and interrogatory regarding comparative fault in a case of an intentional tort where there was no evidence of provocation, nor any indication that the requisite public policy considerations were applied.
2. The trial court erred in giving a jury charge on comparative fault which did not properly instruct the jury on the law as applied to intentional torts.
3. The jury erred in allocating plaintiff 50% in comparative fault.
While the defendants agree with the jury's assessment of 50% comparative fault to the plaintiff, they appeal the following contending that the trial court's award of general damages was excessive; the trial court's award for loss of earning capacity was erroneous; and the trial court's award for loss of consortium was erroneous.

LAW AND OPINION

PLAINTIFF'S APPEAL:
By plaintiff's first and second assignments of error, she contends that the trial court erred by giving a jury charge and interrogatory regarding comparative fault in a case of an intentional tort.
La.Code Civ.P. art. 1793(C) reads as follows:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
Prior to the jury receiving the verdict form and the trial court giving the jury charge regarding comparative fault, the judge, during a recess, asked counsel for plaintiff if he had any objections, additions, or deletions concerning the verdict form. Plaintiff's counsel responded, "Your Honor, I have no none at all."
Additionally, the trial court asked plaintiff's counsel if he had any objections, additions, or deletions concerning the jury instructions, to which counsel responded:
Your Honor, as noted before, I had objection to there being a jury charge on the question of comparative negligence and upon mitigation of damages for the reason that I do not thinkalthough it was pled, I do not think there was any evidence introduced upon which the jury would be entitled to mitigate or to find comparative fault.
As the record is devoid of an objection raised by plaintiff's counsel concerning the *1269 verdict form, he is therefore precluded from raising the issue on appeal. While, counsel for plaintiff did object to a deletion concerning comparative fault, reserving his right to address the issue on appeal, we find that the trial court did not err in giving the instruction.
While the evidence presented to the jury by plaintiff's counsel may have been sufficient for the jurors to conclude that the defendant, Mr. Romero, committed an intentional tort, it was not the theory of recovery sought after by the plaintiff,[1] and counsel's acceptance of the verdict form that was given to the jury supports a finding that the jury assessed the case presented to them as a negligence case. More importantly, as pointed out by the defendant's attorney, plaintiff's attorney failed to request that the trial judge instruct the jury about intentional torts in addition to the negligence instruction. As such, we find that the trial court's instructions concerning comparative fault were appropriate, given the fact that the case before it involved the negligence of the defendant and any fault on the part of the plaintiff for the injuries she sustained as a result of the altercation the two parties were involved in.
As to plaintiff's final assignment of error, we likewise find that the jury did not err in concluding that Mrs. Broussard was 50% at fault for the damages she sustained as a result of the altercation that ensued between herself and her brother, Mr. Romero.
It is well settled that an appellate court may not set aside a trial court's or jury's findings of fact in the absence of manifest error or unless they are clearly wrong. Stobart v. State, through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). Based on this standard, the Louisiana Supreme Court has established a two-tier test for reversal on appellate review:
(1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
(2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
Id. at 882. Even when an appellate court may feel that its own evaluations are as reasonable as the fact finder's, reasonable determinations and inferences of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). These principles are based upon the trial court's opportunity to evaluate live witnesses and upon the separate and distinct functions of the trial and appellate courts. Stobart, 617 So.2d 880.
Thus, an appellate court must do more than simply review the record for some evidence which supports or controverts the trial court's findings; it must review the record in its entirety to determine whether the decision reached was manifestly erroneous. Mart v. Hill, 505 So.2d 1120 (La.1987). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Law v. City of Eunice, 94-1312 (La.App. 3 Cir. 4/5/95); 653 So.2d 149.
Although the trial court is in a better position to evaluate and assess the credibility of witnesses, the overriding concern of the court of appeal is whether the fact finder's credibility determinations are reasonable. Where documents or objective evidence so contradict the witness' story, or the story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit the witness' story, a court of appeal may find manifest error or clear wrongness in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d 840.
*1270 Besides Mrs. Broussard herself, Mr. Earl Veronie, her brother-in-law, testified as an eyewitness on her behalf. As previously stated, Mrs. Broussard contends that while she took pictures of her brother, the defendant grabbed her, threw her to the ground, and repeatedly punched and stomped on her as she lay helpless on the ground. Mr. Veronie's testimony corroborated the events as told by Mrs. Broussard.
Testimony by other eyewitness of the incident in question, however, was to the contrary. Instead, Mrs. Brenda Romero, wife of the defendant; Mrs. Rondalyn Hebert; and Donna Romero testified that while Mrs. Broussard either swung or threw her camera at her brother, she lost her balance and fell backwards and this was the sole cause of her injuries. Furthermore, while all witnesses acknowledged that words were exchanged between the two, there was conflict as to what was really said.
After a careful review of the entire record, we conclude that it was reasonable for the fact finders to reach the conclusion they did. It is evident that the jury assessed the conflicting testimony, and rather than believing any one side of the chronicle of events as told by the witnesses, they determined that each party's conduct was a proximate cause of the damages sustained by Mrs. Broussard. Clearly, it is possible for the jury to determine, based on the evidence presented, that Mrs. Broussard and Mr. Romero initially were engaged in a verbal altercation, that Mrs. Broussard perhaps swung the camera at Mr. Romero, and that as a result a physical altercation ensued.
We do, however, recognize that if this case had been tried under the theory of an intentional tort, as plaintiff's counsel so ardently suggested, the trial court probably would not have been inclined to give an instruction concerning mitigation of damages or comparative fault unless it was warranted. As we so noted in Broussard v. Lovelace, 610 So.2d 159, 162 (La.App. 3 Cir.1992), writ denied, 615 So.2d 343 (La.1993):
The general rule in Louisiana is that comparative negligence does not apply in intentional tort cases. South Texas Lloyds v. Jones, 273 So.2d 853 (La.App. 2 Cir. 1973); Ryland v. Taylor, Porter, Brooks & Phillips, 496 So.2d 536 (La.App. 1 Cir. 1986), writ denied, 497 So.2d 1388 (La. 1986). Recent cases, though, have applied the doctrine of comparative fault in intentional tort suits for assault and battery. The doctrine was applied in these cases because it was found that the plaintiff, through his actions or words, had provoked the defendant into committing the tort. See Robinson v. Hardy, 505 So.2d 767 (La.App. 2 Cir.1987), writ denied, 508 So.2d 825 (La.1987), and Jones v. Thomas, 557 So.2d 1015 (La.App. 4 Cir.1990).
Under the facts of this case, it is apparent that the trial judge would have parted from the general rule and given a special jury instruction concerning comparative negligence for an intentional tort. Again, while the evidence presented certainly may have been sufficient to support a finding that an intentional tort occurred, and the evidence could warrant a special instruction as to comparative fault, we are presently not faced with this issue, so we will refrain from addressing it.

DEFENDANTS' APPEAL:

Award of General Damages:
The trier of fact is granted much discretion in the award of general damages, i.e., those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life style which cannot be measured definitively in terms of money. Anderson v. Welding Testing Lab., Inc., 304 So.2d 351 (La. 1974). The question on appeal is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Montgomery v. Opelousas General Hosp., 546 So.2d 621 (La.App. 3d Cir.), writ denied, 551 So.2d 630 (La.1989) (and cases cited therein).
Appellate review of general damage awards involves a two step process. The first inquiry is whether the award for the particular injury under the circumstances is a clear abuse of the much discretion of *1271 the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979). If an abuse of discretion is found, then the second inquiry allows an appellate court to review prior awards to determine the highest or lowest award reasonably within the trier of fact's discretion. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). However, as stated by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994):
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Id. at 1261.
Black v. State, Through Dep't of Pub. Safety & Corrections, 94-1305, p. 8-9 (La.App. 3 Cir. 5/17/95); 657 So.2d 270, 276, writ denied 95-1546 (La.9/29/95); 660 So.2d 876, writ denied, 95-1528 (La.9/29/95); 660 So.2d 876.
Guided by these principles, our review of the evidence and the testimony presented, we cannot say that the general damage awards were abusively high, as the defendant contends.
Dr. Kate Lee, board certified in family practice and in anatomic and clinical pathology, testified that she began treating Mrs. Broussard in 1978. While Dr. Lee testified that Mrs. Broussard had a multitude of preexisting injuries prior to the accident that occurred on January 1, 1993, she clearly recognized that these problems had been aggravated by the multiple contusions that Mrs. Broussard suffered.
Particularly, Dr. Lee conducted a physical examination of Mrs. Broussard on January 4, 1993, as a result of the incident that occurred on January 1, 1993. Dr. Lee testified that the plaintiff complained of pains all over the body including: left arm, wrists, breasts, ankles and bruise on the right forearm, right ankle swollen, right forearm and right wrist bruised. Although Dr. Lee could not definitely say that Mrs. Broussard was beaten up, she confirmed that she had multiple contusions that could be the result of a beating.
After this initial visit, Dr. Lee saw Mrs. Broussard on January 21, 1993, who expressed continued pain in her wrist and ankle. Dr. Lee ordered X-rays. After seeing Mrs. Broussard again on February 19, 1993, and reviewing her chart, Dr. Lee referred her to an orthopedic surgeon, Dr. John Cobb, who performed a carpal tunnel release on her left wrist.
Additionally, Dr. Martin Bell, a plastic surgeon, testified, giving a brief medical history of Mrs. Broussard. His testimony revealed that Mrs. Broussard previously suffered from fibrocystic disease of the breast which led to removal of her breast tissue. Her physical condition was remedied by reconstructive surgerythe placing of breast implants. Unfortunately, the implants ruptured causing Dr. Bell on August, 18, 1992, to remove the implants. In November of 1993, Dr. Bell saw Mrs. Broussard, and her chief complaint was that she had suffered a beating from her brother that resulted in injuries to the left side of her chest, a cyst in the palm of her left middle finger, and he stated that she had carpal tunnel syndrome. Dr. Bell was mainly concerned with Mrs. Broussard's complaint concerning her left breast area. After examination, the tests revealed that Mrs. Broussard had a cyst that developed in the lower side of her left breast which resulted in a need to have surgery to remove the *1272 cyst wall. Despite the preexisting conditions that Mrs. Broussard had experienced and the postoperative recovery connected with these conditions, Dr. Bell opined that the swollen area that had developed on the left side of her breast was induced by the trauma she sustained.
In light of the above testimony, we find that the trial court did not abuse its discretion in awarding Mrs. Broussard $85,000.00 for general damages.

Award for Loss of Earning Capacity:
In Rowe v. State Farm Mutual Automobile Insurance Co., 95-669, p. 22 (La.App. 3 Cir. 3/6/96); 670 So.2d 718, 731, writ denied, 96-0842 (La.5/17/96); 673 So.2d 611, this court stated:
A plaintiff must prove by a preponderance of the evidence that he suffered a loss of earning capacity. Harig v. State of Louisiana, Bd. of Elem. & Sec. Education, 25,702 (La.App. 2 Cir. 3/30/94); 635 So.2d 485. To do so, he "must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." Aisole v. Dean, 574 So.2d 1248, 1252 (La. 1991). While claims for past lost wages must be established with some degree of certainty, Dupre v. Exxon Pipeline Co., 93-1528 (La.App. 3 Cir. 6/1/94); 638 So.2d 1118, writ denied, 94-2200 (La.11/18/94); 646 So.2d 379, they need not be proven with mathematical certainty, but only by such proof as reasonably establishes the plaintiff's claim. Veazey v. State Farm Mut. Auto Ins., 587 So.2d 5 (La.App. 3 Cir.1991). This award may be supported by the plaintiff's detailed and uncorroborated testimony. Craig v. Burch, 228 So.2d 723 (La.App. 1 Cir.1969), writ denied, 255 La. 475, 231 So.2d 393 (1970). Additionally, the plaintiff's work experience and earning history is [sic] particularly useful in calculating the amount due for loss of income. Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3 Cir.1988).
While we recognize that all of the factors above need not be present in order for the trial court to determine an award of loss of earning capacity, it is necessary that at least one of the factors be present in order to assess an appropriate award. In the present case, the only relevant testimony concerning Mrs. Broussard's loss of earning capacity came from her own testimony, the testimony of her daughter, and the testimony of her husband. The testimony evidenced that Mrs. Broussard could no longer work as a beautician due to the injuries she sustained as a result of the beating she endured. While the testimony of her daughter and husband evidenced that Mrs. Broussard was at some point employed as a hairdresser, it is clear that she ceased such employment shortly after her implants were removed in August of 1992. Finally, the testimony of her husband, besides her own, indicated that she would be unable to continue to work as a hairdresser if she so chose. Thus, the evidence adduced at trial explored Mrs. Broussard's condition prior to the accident.
Dr. Bell testified that while he did not find Mrs. Broussard's condition disabling after removing the cyst caused by the trauma, he did restrict her from engaging in heavy lifting and advised her to keep her left arm relatively still. Dr. Bell also testified that he received a report dated July 23, 1993, from Dr. Dole, an immunologist, indicating that it was his opinion that Mrs. Broussard was fully disabled because of a multitude of medical and psychological problems.[2] However, Dr. Bell stated that the contradiction as to Mrs. Broussard's status as far as disability was concerned stemmed from the fact that he was a surgeon, rather than a general practitioner.
While impairment of earning capacity cannot be calculated with mathematical certainty, sound judicial discretion must be exercised and all proper considerations must be weighed in making an award. Hobgood v. Aucoin, 574 So.2d 344 (La.1990). The only evidence of Mrs. Broussard's disability is from the testimony of herself, her husband and her daughter. There is no medical testimony *1273 evidencing that Mrs. Broussard is disabled nor was evidence introduced as to what her salary was when she was employed. Without more, we cannot conclude that Mrs. Broussard is unemployable due to the injuries she sustained as a result of the altercation with her brother.
In light of the above, we conclude that the jury abused its discretion in awarding $43,160.00 for loss of earning capacity.

Award for Loss of Consortium:
The compensable elements of damage in a loss of consortium claim are loss of society, sex, service, and support. "Society" is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. "Support" is the lost family income that would go to support the uninjured spouse. "Service" is the uncompensated work around the house or educational help with the children which will, as a result of the injury, have to be obtained from another source and at some price.
Rowe, 670 So.2d at 732.
In the instant case, Mr. Daniel Broussard testified that since the accident his wife, Mrs. Lollian Broussard, continues to experience pain in her ankle, right wrist, left hand and lower back and these conditions caused his wife to have a negative disposition and become less tolerant of him. Mr. Broussard testified that his wife is now unable to work as a beautician because she cannot raise her arm up for extended periods of time. All of these facts were corroborated by his daughter, Karen Desormeaux.
It is clear from the record that Mr. Broussard demonstrated some loss of society and companionship and the loss of some happiness in his marriage since the accident. Therefore, we find that the trial court did not abuse its discretion and was not clearly wrong in awarding a sum of $10,000.00 for loss of consortium, and we affirm this award.

DECREE
For the foregoing reasons, that part of the judgment of the trial court which awarded $43,160.00 in loss of earning capacity is reversed. The remainder of the judgment of the trial court is affirmed at defendants' cost.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] Plaintiff's original petition read as follows: "Petitioner shows that defendant was grossly negligent and reckless in his attack upon petitioner, and that due to such gross and wanton behavior, petitioner sustained serious and permanent injuries."

Furthermore, it was not until plaintiff filed a motion for new trial/JNOV that plaintiff requested relief for an action involving an intentional tort.
[2] Dr. Dole was described by Dr. Bell as a specialist in autoimmune diseases associated with breast implants.