# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 05-204


**JAMES RONALD JOHNSON**

**VERSUS**

**HAMILTON MEDICAL GROUP, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20030434
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**MARC T. AMY**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\***


Court composed of Marc T. Amy, Michael G. Sullivan, and Billy Howard Ezell, Judges.


**AFFIRMED AS AMENDED.**

**Stephen Gary McGoffin**
**Jacques E. deMoss**
**Shawn A. Carter**
**Durio, McGoffin, Stagg & Ackermann**
**Post Office Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
 **Medical Center of Southwest Louisiana**
 **Hamilton Medical Center-Lafayette**
 **Southwest Medical Center-Lafayette**
 **Hamilton Medical Group**

**Chris Villemarette**
**V. Jacob Garbin**
**Hawkins & Villemarette, L.L.C.**
**102 Asma Boulevard**
**Saloom III, Suite 110**
**Lafayette, LA 70508**
**(337) 233-8005**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **James Ronald Johnson**

AMY, Judge.

The plaintiff filed suit, seeking damages for injuries he allegedly sustained after he fell while trying to alight from a wheelchair. The trial court awarded the plaintiff $50,000.00 in general damages and $18,975.32 in future loss of earning capacity. The plaintiff appeals the amount awarded for his future loss of earning capacity, the assessment of legal interest, the denial of past loss of earning capacity, and the trial court's determination of the duration of his disability. For the following reasons, we affirm as amended.

**Factual and Procedural Background**

The record reveals that on July 11, 2002, James Ronald Johnson was admitted to the emergency room at the Medical Center of Southwest Louisiana with severe stomach cramps. He remained in the hospital for further testing. On July 13, 2002, Ronald Martin, a radiologic technologist, went to Mr. Johnson's hospital room to take him to the radiology lab for testing. After the testing was completed, Mr. Martin helped Mr. Johnson into a wheelchair to return him to his room.

According to Mr. Martin's testimony, he wheeled Mr. Johnson into his room and brought the chair to a stop. Mr. Johnson testified that when Mr. Martin did not give him any instructions, he "started to get up." When Mr. Johnson pushed himself up from the wheelchair, it rolled out from under him. Mr. Johnson alleged that he sustained injuries to his upper thigh, left hip, and left buttock. The record indicates that he was diagnosed with piriformis syndrome and possible sciatic nerve injury.

Mr. Johnson filed suit seeking damages for his alleged injuries and naming Hamilton Medical Group as the defendant. After a bench trial, the trial court found that the defendant was responsible for Mr. Johnson's injury because its employee failed to lock the brakes on the wheelchair after bringing Mr. Johnson back to his

room.  Mr. Johnson was awarded the following:  $12,127.25 in past medical expenses, together with legal interest from date of judicial demand until paid; $18,975.32 in future lost earning capacity, together with legal interest from date of judgment until paid; and $50,000.00 in general damages, together with legal interest from date of judicial demand until paid.  It is from this judgment that Mr. Johnson appeals, designating the following assignments of error:

1.  The trial court committed legal error when it failed to assess legal interest on the $18,975.32 award for future loss of earning capacity.

2.  The trial court was clearly wrong when it failed to award past loss of earning capacity.

3.  The trial court was manifestly erroneous when it awarded $18,975.32 in loss of earning capacity.

4.  The trial court was clearly wrong when it concluded that Mr. Johnson would be disabled for a period of 18 months post trial.

**Discussion**

*Legal Interest*

In his brief submitted to this court, Mr. Johnson contends that La.R.S. 13:4203 makes no distinction between past and present damages; therefore, legal interest must be assessed on all damage awards.  Mr. Johnson argues that the trial court erred when it awarded legal interest on the award for future loss of earning capacity from date of judgment until paid rather than from date of judicial demand until paid.

Louisiana Revised Statutes 13:4203 provides that "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts."  Here, the trial court awarded legal interest on the $18,975.32 from date of judgment until paid, not from date of judicial

2

demand. In *Edwards v. Daugherty*, 03-2103, pp. 36-37 (La. 10/1/04), 883 So.2d 932, 955, the Louisiana Supreme Court held:

> The language of LSA-R.S. 13:4203 is clear and unambiguous: no distinction is made between judgments sounding in "past damages" and those sounding in "future damages." The plain language of the statute makes it evident that it applies to "all judgments, sounding in damages...." No exception is made for future damages. Thus, without action from the legislature, we decline to distinguish between past and future damages in the award of legal interest.

Given the above discussion in *Edwards* applying the wording of La.R.S. 13:4203, we find that the trial court erred in awarding legal interest on the award for future loss of earning capacity from the date of judgment. We amend the judgment to reflect that legal interest from date of judicial demand until paid is awarded on the award for future loss of earning capacity.

*Past Loss of Earning Capacity*

Mr. Johnson argues that since the trial court found him disabled up to and through the date of trial and that he would continue to be so afflicted for at least another eighteen months after trial, the trial court was required to assess damages for the losses that he suffered between the date of the accident until trial. In other words, Mr. Johnson contends that his award of $18,975.32 for future loss of earning capacity must be accompanied by an award for past loss of earning capacity. Mr. Johnson contends that he is entitled to at least an additional $24,621.93[1] for the seventeen months between the date of injury and trial.

The trial court did not compensate Mr. Johnson for past loss of earning capacity. "'A trial court's award for loss of earning capacity is reviewed under the

---

[1] Mr. Johnson states in his brief that he arrived at this figure by taking the total damage award for future loss of earning capacity and dividing it by 547.5, the total number of days in an eighteen month period. He multiplied this amount by 711, the total number of days between the date of the injury and trial. The total is $24,621.93.

manifest error standard of review.'" *Fruge v. Hebert Oilfield Constr., Inc.*, 03-349, p. 6 (La.App. 3 Cir. 10/1/03), 856 So.2d 100, 105, (quoting *Bellard v. S. Cent. Bell Tel. Co.*, 96-1426, p. 17 (La.App. 3 Cir. 8/27/97), 702 So.2d 695, 705, *writ denied*, 97-2415 (La.12/12/97), 704 So.2d 1202), *writ denied*, 03-2997 (La. 1/30/04), 865 So.2d 77.

According to Mr. Johnson's testimony, before the accident, he was involved in every aspect of his business, Johnson's Fresh Pork Sausage. Mr. Johnson explained that he "made the sausage [and] mix[ed his] own seasoning." He delivered sausage to vendors both in and out of state. He also conducted in-store demonstrations, in which he would cook the sausage and hand out samples to customers.

Mr. Johnson testified that after his accident, the company's sales decreased significantly. When asked to compare sales before and after his accident, Mr. Johnson stated, "Oh, my best year was $320,000. Last year it was less than $100,000." According to the calculations of Dr. Douglas Womack, an expert in the field of economics, in the year after the fall, Mr. Johnson suffered a tax loss of $61,881.00. Mr. Johnson attributed his decrease in sales to his inability to conduct in-store demonstrations due to his physical limitations. Mr. Johnson remarked, "I had to hire a girl to do demos. She can't sell it like I can, but she does her best."

In *Jones v. Harris*, 04-965, p.17 (La.App. 4 Cir. 2/2/05), 896 So.2d 237, 248, the court held that "an analysis of an award for past wages of a salaried employee is generally a straightforward mathematical calculation." In this instance, the necessary calculation was not as straightforward, as Mr. Johnson is not an employee of the business and does not draw a regular salary. Dr. Womack testified that he did not

4

know what Mr. Johnson's annual earnings were for the past five years. He stated that he only had "what he received from the business as a corporation." Glenn Hebert, a vocational rehabilitation counselor, admitted in his deposition that "since [Mr. Johnson] was self-employed, I didn't -- there [were] no good tax records to say what he was making[.]" He went on to explain, "when someone is self-employed, you can't get an accurate indication of their earning abilities or what they're actually making, unless you go back and do a business analysis of all the other ancillary costs that are written off on your tax returns that's actually money in the person's pocket."

Mr. Johnson's testimony alone indicated that the company's sales were $320,000.00 for his *best* year of business. The record does not indicate when this occurred. Moreover, the record contains inadequate documentation of Mr. Johnson's expenses associated with his business operation. Given this lack of documentation, we find no error in the determination that Mr. Johnson proved entitlement only to future loss of earning capacity.

Accordingly, Mr. Johnson's argument regarding the necessity of an award for past loss of earning capacity is without merit.

*Future Loss of Earning Capacity*

Mr. Johnson contends that the trial court erred in awarding only $18,975.32 for future loss of earning capacity. He argues that this award should not have been reduced by a minimum wage offset. Mr. Johnson states that it will be difficult for him to work a minimum wage job because he has trouble sitting, driving, or carrying weight for an extended period of time. He also argues that his opportunities are limited because he is fifty-seven years old and did not graduate from high school.

5

According to Dr. Womack's testimony, Mr. Hebert prepared a report stating that it would cost $68,810.00 per year to hire a "professional manager" to perform the duties that Mr. Johnson performed before his fall and can no longer do. Dr. Womack explained that he used the $68,810.00 figure as the earning capacity base. He explained as follows with regard to his subsequent calculation:

> I projected that to grow just to keep up with inflation two and one-half percent a year for the next 4.7 years. Then I looked at the Wall Street Journal and determined that the appropriate discount rate to determine the present value was three and one-half percent . . . So I took that $68, 810, let it grow at two and one-half percent a year for 4.7 years, discounting it back to present value using the three and one-half discount rate and that gave me a figure of $305,463 as his lost earning capacity equivalent which would be like the cost of someone hiring someone else to do, a professional person to come in and do his job.

Dr. Womack added $24,437.00 for fringe benefits and $39,677.00 for payroll taxes to the $305,463.00 for lost earning capacity. According to Dr. Womack, "[i]t gives you a total economic loss for the future, present value of it to be $369,577."

Dr. Womack was later questioned by the trial court regarding the wages paid per hour to delivery persons in the Lafayette area. Dr. Womack testified that they are paid "between $6 to $7.50 an hour." Dr. Womack also explained that if a person had additional duties, they may be able to earn ten dollars per hour. Using the formula stated above, Dr. Womack found that if Mr. Johnson was employed earning ten dollars per hour, his total loss of future earning capacity would be $59,456.00. The trial court initially used this number as Mr. Johnson's future loss of earning capacity; however, because it determined that Mr. Johnson would only be disabled for eighteen months and not 4.7 years, this amount was reduced to $18,975.32.

In addition to the record supporting the trial court's calculations, it also supports its initial determination that Mr. Johnson could work at some capacity. At trial, Mr. Johnson was questioned on his ability to perform certain tasks since his fall:

Q      Mr. Johnson, how long can you stay seated in one position?

A      A half hour.

Q      Before this fall how long could you stay seated in one position?

A      Two hours.

Q      Before the accident how long could you -- how far could you travel in a car before you had to take a rest?

A      Oh, just once between fillups.

Q      How long is that?  How many miles or how many hours?

A      Oh, I'd say three or four hours.

Q      Are you able to do that now?

A      Oh, no.

Q      How long can you drive without taking a rest?

A      Well, as long as I keep my foot up I can drive but then my leg goes to sleep and circulation cuts off, so I have to stop about every hour.

Mr. Johnson also revealed that he resumed doing his in-store demonstrations, albeit only for two or three hours a day.  Furthermore, the record reveals a lack of medical testimony that Mr. Johnson is unable to return to work.

Since the record indicates that Mr. Johnson resumed working in a limited capacity, we find that the trial court did not err in considering a minimum wage earning potential in calculating the award for future loss of earning capacity.

This assignment lacks merit.

*Duration of Disability*

Finally, Mr. Johnson questions the award for future loss of earning capacity in another respect. Dr. Womack, Mr. Johnson's expert witness in the field of economics, explained that "according to the Bureau of Labor Statistics[,] Mr. Johnson has a work life expectancy today of 4.7 years." Mr. Johnson argues that it is more likely than not that he would be unable to work within his work life expectancy; therefore, his loss of earning capacity should be based upon the 4.7 years of his work-life expectancy. He contends that the trial court erred in awarding only eighteen months of disability.

In *Pontiff v. Pecot & Assoc.*, 00-1203, pp. 15-16 (La.App. 3 Cir. 1/31/01), 780 So.2d 478, 487, the court considered the burden of proof required of a plaintiff seeking damages for future loss of income/earning capacity and explained that:

> Evidence of the plaintiff's inability to work must be presented to the court. *See Broussard v. Romero*, 96-973 (La.App. 3 Cir. 2/26/97); 691 So.2d 1265, *writ denied*, 97-0670 (La.4/25/97), 692 So.2d 1092; *Aisole v. Dean*, 574 So.2d 1248 (La.1991). A plaintiff must present evidence that shows his disability either prevents him from working, or reduces his income earning capacity, in order to receive damages for loss of future income. In order to obtain an award for future loss of wages and/or loss of earning capacity a plaintiff "must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident." *Aisole*, 574 So.2d at 1252. An award of damages for future loss of wages requires that the plaintiff produce evidence that he will be disabled in the future from pursuing gainful employment. *See Efferson v. State, Through Dep't of Transp. & Dev.*, 463 So.2d 1342 (La.App. 1 Cir.1984), *writs denied*, 465 So.2d 722 (La.1985). In the past, we have denied damages for loss of future wages in a case where there was no medical testimony demonstrating that the plaintiff was disabled. *Broussard*, 691 So.2d 1265.

The court also found "[m]edical testimony that a plaintiff either cannot work, or has a reduced capacity to work, is essential to establishing loss of future income." *Id.* at 487.

8

Here, the trial court rejected Dr. Womack's assertion that Mr. Johnson would be unable to work for 4.7 years, stating in its written reasons for judgment:

> However, as a result of Mr. Johnson[']s termination of treatment in January 2003, there is no evidence in the record as to his chances of a successful recovery other than Dr. Staires['] opinion that his condition is generally hard to treat and his prognosis was guarded. Considering [Dr. Staires'] opinion, together with Mr. Johnson's uncontradicted testimony, I do believe he has at least proven he has not progressed sufficiently to return to work at present and will not be able to do so for at least a considerable period in the future. Under the circumstance I find it is more probable than not that he will be unable to return to the listed tasks for the next 18 months.

"[A] trial court is not bound by expert testimony and remains free to accept or reject an expert's conclusions." *Taylor v. State of Louisiana, DOTD*, 03-219, p. 15 (La.App. 3 Cir. 6/23/04), 879 So.2d 307, 318, *writ denied*, 04-1887 (La. 10/29/04), 885 So.2d 595. In the instant case, the only evidence offered to determine the duration of Mr. Johnson's disability was the testimony of Dr. Womack. Dr. Steven Staires, who specializes in interventional pain management, treated Mr. Johnson from September 2002 to January 2003, after which time Mr. Johnson did not attend further appointments. When Dr. Staires was asked at his deposition to give his prognosis for Mr. Johnson, he answered that as of January 7, 2003, his prognosis "would have been guarded . . . ." Dr. Staires further noted that as of January 2003, "[Mr. Johnson] wasn't really reporting significant symptoms."

Moreover, Dr. Staires did not specifically comment on the duration of Mr. Johnson's disability. He explained that "[i]n general, I would say most people do improve significantly . . . . I would say 75 percent of the time, if someone does everything you just described, they would be better. They might not be symptom-free, but they would be better and functional and manageable."

9

Upon review, we conclude that the medical evidence did not require the trial court to find that Mr. Johnson will be unable to return to work for 4.7 years.[2] Because Mr. Johnson's work-life expectancy was calculated by Dr. Womack, an expert in the field of economics, the trial court was free to reject his conclusions and find that Mr. Johnson's claim of 4.7 years of disability was unproven.

This assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed, except as to the award of legal interest on the damages awarded for future loss of earning capacity. We amend the judgment to reflect that, pursuant to La.R.S. 13:4203, the award for future loss of earning capacity is made together with legal interest thereon from the date of judicial demand until paid. As amended, the judgment is affirmed. All costs of this proceeding are assigned to the appellant, James Ronald Johnson.

**AFFIRMED AS AMENDED.**

---

[2] Because the finding as to eighteen months of disability was not challenged by the defendant, we do not consider whether the trial court's finding as to eighteen months of disability is supported by the record.