# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 14-898


**NOLAN C. BARRAS, JR., ET UX.**

**VERSUS**

**PROGRESSIVE SECURITY INSURANC E COMPANY, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20126079
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**DAVID KENT SAVOIE**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.


**AFFIRMED AS AMENDED.**

**Orida Broussard Edwards**
**P. O. Box 90443**
**Lafayette, LA 70509-0443**
**(337) 237-6575**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Nolan C. Barras, Jr.**
    **Nicole Z. Barras**

**Sean P. Rabalais**
**Casler, Bordelon & Lawler**
**11550 Newcastle Avenue, Suite 200**
**Baton Rouge, LA 70816**
**(337) 347-0096**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Progressive Security Insurance Company**
    **Fred Landry**

**SAVOIE, Judge.**

Plaintiffs, Nicole and Nolan Barras and their five minor children, appeal the jury verdict award as abusively low. For the following reasons, we amend and affirm.

## ISSUES PRESENTED

1. Did Mrs. Barras establish that she incurred compensable past medical expenses in the amount of $23,641.96, thus requiring an increase in the jury's award of $21,641.96 for past medical expenses?

2. Did the jury err in its failure to award future medical expenses to Mrs. Barras in light of the evidence presented?

3. Did the jury abuse its discretion by awarding Mrs. Barras only $25,000 in general damages for past and future mental and physical pain and suffering for the injuries she alleged were caused by this automobile accident?

4. Does an injured party's duty to mitigate damages include consenting to aggressive medical treatment or intrusive medical procedures when the injured party's pre-accident lifestyle is one that embraced homeopathy, alternative medicines, natural remedies, and herbal supplements?

5. Did the jury abuse its discretion by awarding only $5,000 to Mrs. Barras for her loss of enjoyment of life?

6. Did the jury abuse its discretion by awarding only $2,000 to Mr. Barras for the loss of consortium he experienced as a consequence of his wife's accident-related injuries?

7. Did the jury abuse its discretion by making minimal awards of damages to the five Barras children for the loss of consortium when their loss of educational benefits and the negative impact of Mrs. Barras' frequent absences from the family home were extreme as a consequence of this automobile accident?

8. Should "loss of education benefits" be designated as a separate element of damages for homeschooled children and what factors should be considered in determining the value of a child's loss of education benefits when the parent who sustains bodily injuries is the primary educator of homeschooled minor children?

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff, Nicole Barras, was involved in an automobile accident on November 29, 2011, wherein she sustained multiple bodily injuries. She sued the driver Fred Landry, Sr. and his insurance provider, Progressive Security Insurance Company ("defendants"), for damages sustained as a result of the collision. Nicole Barras's husband, Nolan Barras, and their five minor children also sued the defendants for their loss of consortium claims. The issue of liability was stipulated at trial. After a trial by jury, the following damages were awarded to Nicole Barras:

| | |
|---|---|
| Past Medical Expenses | $21,641.96 |
| Future Medical Expenses | $0 |
| Transportation Expenses | $3,850.00 |
| Mental and Physical Pain and Suffering, Past and Future | $25,000.00 |
| Loss of Enjoyment of Life | $5,000.00 |

Nolan Barras and the five Barras children were awarded the following damages for their loss of consortium claims:

| | |
|---|---|
| Nolan Barras | $2,000.00 |
| Saul Barras | $1,500.00 |
| Lucy Barras | $1,000.00 |
| Agnes Barras | $1,000.00 |
| Silas Barras | $500.00 |
| Manon Barras | $500.00 |

The plaintiffs appeal the damage amounts awarded as abusively low. Plaintiffs also contend that the jury miscalculated the past medical award and committed manifest error in its failure to award future medical expenses.

## LAW AND DISCUSSION

### *Standard of Review*

We review a jury's findings of fact utilizing a manifest error standard. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). After reviewing the record in

2

its entirety, we must find that no reasonable factual basis exists for the jury's finding and that the finding is clearly wrong in order to reverse the jury's award. *Stobart v. State, through Dept. of Transp. and Dev.*, 617 So.2d 880 (La.1993). "[R]easonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Rosell*, 549 So.2d at 844. The cause of a person's injuries is a question of fact reviewed under the manifest error standard. *Housley v. Cerise*, 579 So.2d 973 (La.1991). "In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." La.Civ.Code art. 2324.1. The jury's award of damages is a factual determination entitled to great deference on review. *Guillory v. Lee*, 09–75 (La. 6/26/09), 16 So.3d 1104. We will not disturb an award of damages unless we find the jury abused its very great discretion. *Rando v. Anco Insulations Inc.*, 08–1163 (La. 5/22/09), 16 So.3d 1065.

### *Past Medical Expenses*

Nicole Barras contends that the jury erred in its failure to award the full amount of the past medical expenses she incurred as a result of the accident. The total amount of the past medical expenses introduced into evidence and requested by Mrs. Barras was $23,641.96. The jury awarded $21,641.96 in past medical expenses.

*Gradnigo v. Louisiana Farm Bureau Casualty Insurance Co.*, 08-1198, pp. 15-16 (La.App. 3 Cir. 3/4/09), 6 So.3d 367, 377 (quoting *Simon v. Lacoste*, 05-550, p. 3 (La.App. 3 Cir. 12/30/05), 918 So.2d 1102, 1104-05), discussed the standard of review regarding medical expenses as follows:

3

> [W]hen a plaintiff alleges that medical expenses were incurred "and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support the inclusion of that item in the judgment." [*Esté v. State Farm Ins. Co.*, 96-99, p. 10 (La.App. 3 Cir. 7/10/96), 676 So.2d 850, 857.] A fact finder errs if it fails to award the full amount of medical expenses incurred as a result of the accident and proven by a preponderance of the evidence. *Revel v. Snow*, 95-462 [(]La.App. 3 Cir. 11/2/95), 664 So.2d 655, *writ denied*, 95-2820 (La.2/2/96), 666 So.2d 1084.

It is Mrs. Barras's position that the jury should have awarded the entirety of the medical bills introduced into evidence. To substantiate this contention, she points to another amount awarded by the jury – the transportation award. The jury was asked to calculate the mileage traveled by Nicole Barras to and from medical appointments and award this amount as an item of damages. The total amount requested for this item of damages was $3,850. This represents 100% of the miles traveled for medical treatments, including the massage treatments. The jury accepted this amount as evidenced by their award of $3,850 for transportation expenses. Mrs. Barras suggests that, because the jury awarded the transportation expenses inclusive of the massage treatments, the past medical expenses award should have included the amount for the massages as well.

The defendants' argued this accident exacerbated a pre-existing condition and, during closing argument, suggested that Mrs. Barras's pain was back to pre-accident levels by the end of 2012. The evidence showed that Nicole Barras last saw her treating physician, Dr. Bozelle, and her chiropractor, Dr. Savoy, in November of 2012. After January 1, 2013, the only treatment sought by Nicole Barras was that of her massage therapist, Chester Forest. The expenses for the massage treatments equates to approximately $2,000. The defendants suggested to the jury that they should only award the medical expenses incurred through 2012.

It is no coincidence that the jury deducted $2,000 from the total medical expenses. Clearly, the jury accepted the closing argument put forth by the defendants regarding her pre-existing condition. However, this difference cannot be reconciled with the amount awarded for transportation.

We agree with the plaintiffs that, because Nicole Barras was awarded 100% of her requested mileage to and from medical appointments, she should have also been awarded 100% of the medical expenses.

Therefore, we award Nicole Barras past medical expenses in the amount of $23,641.96.

### *Future Medical Expenses*

*Veazey v. State Farm Mutual Auto Insurance*, 587 So.2d 5, 8 (La.App. 3 Cir. 1991), discusses the standard of review for future medical expenses as follows:

> Future medical expenses, like any other damages, must be established with some degree of certainty. The plaintiff must show that, more probably than not, these expenses will be incurred. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. *Boothe v. New Orleans Public [Serv.], Inc.*, 447 So.2d 620 (La.App. 4 Cir. 1984); *Sikes v. McLean Trucking Co.*, 383 So.2d 111 (La.App. 3 Cir. 1980). An award for future medical expenses cannot be based on mere speculation of the jury. Much stronger proof, such as medical testimony of the specific expenses to arise, should be required for such an award. *Simmons v. Custom-Bilt Cabinet & Supply Co.*, 509 So.2d 663 (La.App. 3 Cir. 1987); *Sikes*, supra.

Although Nicole Barras states that she intends to continue with massage therapy sessions, Drs. Bozelle and Savoy testified that they could not make any future medical recommendations because they had not seen her in over a year prior to trial. Based on the lack of medical testimony regarding future medical expenses, we find no abuse of discretion in the jury's failure to award future medical expenses.

### *General Damages and Mitigation of Damages*

Mrs. Barras contends that the trial court's award of $25,000.00 in general damages was abusively low. We disagree.

The standard of review for a general damages award was set forth by the Louisiana Supreme Court in *Duncan v. Kansas City Southern Railway Co.*, 00–66, pp. 13-14 (La. 10/30/00), 773 So.2d 670, 682-83, *cert. dismissed*, 532 U.S. 992, 121 S.Ct. 1651 (2001) (citations omitted) as follows:

> General damages are those which may not be fixed with pecuniary exactitude; instead, they "involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms." Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. As we explained in *Youn [v. Mar. Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994)]:
>
> > Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or [reduce] the award.
>
> The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion.

Nicole Barras treated with Dr. Savoy, a chiropractor, for five years prior to this accident. Dr. Savoy performed chiropractic adjustments on her neck and back during this time. The defendants' case rests on the contention that Nicole Barras

6

had a pre-existing condition that was made worse by this accident. Dr. Savoy testified that the subject accident aggravated these pre-existing conditions.

Mrs. Barras's treating physician, Dr. Bozelle, records in his treatment notes less than three months after the accident on February 14, 2012, that her "symptoms are not bothersome everyday" and "she home schools five children and is able to tolerate her symptoms on a daily basis." Mrs. Barras further states that her "symptoms are tolerable." Nicole Barras stopped treatment with both Drs. Savoy and Bozelle in November 2012 even though neither doctor released her from their care.

Nicole Barras began to see Chester Forest in August 2012. Chester Forest is a neuromuscular sports injury therapist. Nolan Barras testified that Nicole showed "marked improvement" about four months after she began receiving these massages. Mrs. Barras has had an average of one massage per month thereafter.

Dr. Rodney Burns is a radiologist who performed Mrs. Barras's open-air MRI on November 2, 2012, nearly a year after the subject accident. He reviewed the findings and found that she had a disc protrusion at C5-C6. Because this was Mrs. Barras's first MRI, Dr. Burns had no basis for comparison in order to determine when this protrusion occurred. Importantly, he could not state whether this injury was caused by the accident.

Mrs. Barras raises the issue of whether the duty to mitigate damages includes the necessity of consenting to medial branch blocks in order to confirm Dr. Bozelle's belief that facet joints are an issue in this case. Nicole Barras argues she did not consent to the medial branch blocks because she lives a holistic lifestyle. She contends the general damages award was reduced because of the way she lives her life. We disagree. It is clear from the evidence, the past medical expenses

award, and the general damages award that the jury determined Nicole Barras was no longer suffering from the injuries she sustained in the accident. As such, a discussion regarding mitigation of damages is not warranted.

Based upon the evidence in this case, we find no abuse of discretion in the jury's award of general damages.

### Loss of Enjoyment of Life

Nicole Barras was awarded $5,000 in damages for loss of enjoyment of life. "Loss of enjoyment of life…refers to detrimental alterations of a person's life or lifestyle or the person's inability to participate in the activities or pleasures of life that were formerly enjoyed" prior to the injury. *McGee v. A C and S, Inc.*, 05-1036, p. 3 (La. 7/10/06), 933 So.2d 770, 773. "[W]hether or not a plaintiff experiences a detrimental lifestyle change depends on both the nature and severity of the injury and the lifestyle of the plaintiff prior to the injury." *Id.* at 775.

Nicole Barras testified her daily activities were impacted by this accident. For example, she stated she was unable to cook for her family. Certain extracurricular activities were affected including camping, ice skating, and fishing. Regarding fishing, Nolan Barras testified Nicole is still able to go fishing; however, she does not "enjoy it as much anymore."

It was Mrs. Barras's testimony that she could not hold her first grandchild because it put too much strain on her. She further testified she was not "joyful" anymore. Nolan Barras testified that, as a trained cosmetologist, Nicole maintained haircuts for the entire family. He stated that, while she is still able to cut hair, she "paid for it" later.

Based on the evidence adduced on this issue, we cannot say the jury was manifestly erroneous in its award for Nicole Barras's loss of enjoyment of life.

8

### *Loss of Consortium and Loss of Educational Benefits*

> The compensable elements of damage in a loss of consortium claim are loss of society, sex, service, and support. "Society" is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. "Support" is the lost family income that would go to support the uninjured spouse. "Service" is the uncompensated work around the house or educational help with the children which will, as a result of the injury, have to be obtained from another source and at some price.

*Broussard v. Romero*, 96–973, p. 12 (La.App. 3 Cir. 2/26/97), 691 So.2d 1265, 1273, *writ denied,* 97–670 (La. 4/25/97), 692 So.2d 1092 (quoting *Rowe v. State Farm Mut. Auto. Ins. Co.*, 95–669, p. 25 (La.App. 3 Cir. 3/6/96), 670 So.2d 718, 732, *writ denied*, 96–824 (La. 5/17/96), 673 So.2d 611).

### Nolan Barras

The jury awarded $2,000 to Nolan Barras. At the time of the accident, Nicole Barras was taking her husband to a pre-surgery doctor's appointment. He had surgery on his foot two days later. He testified that he needed Mrs. Barras's help after the surgery, however, she was not able to help him because of the accident. He stated her injury caused stress in their relationship and it was exhausting. There was testimony that Mrs. Barras had limitations in terms of cooking, cleaning, and taking care of the children.

It is clear from the record that Mr. Barras established some loss of society and companionship; however, we cannot say that the jury was clearly wrong in awarding the sum of $2,000 to Nolan Barras. We affirm this award.

### The Barras Children

Nicole Barras had five minor children at the time of the accident. Mrs. Barras homeschooled her children and she contends the children's education suffered as a result of this accident. The plaintiffs requested "loss of educational

benefits" as an element of damages for each of their minor children. The trial court excluded it as a separate element of damages on the verdict form.

We agree with the trial court that "loss of educational benefit" should not be considered a separate item of damages on the verdict sheet. A loss of consortium claim encompasses the compensable element of "service". As stated previously, "'service' is the uncompensated work around the house or educational help with the children which will, as a result of the injury, have to be obtained from another source and at some price." *Broussard*, 691 So.2d at 1273. We agree with the plaintiffs that the impact of the accident on homeschooling should be recognized. However, we believe it was recognized as an element within the children's loss of consortium claim.

Mrs. Barras testified that, due to the number of medical appointments she attended, the children needed to make up their schooling over three consecutive summers to catch up on their coursework. She also testified that she preferred a more "fun" approach to teaching and, because of the accident, she had to teach from workbooks. She stated that the older children had to help with the younger children.

A review of the children's awards proves the jury took "loss of educational benefit" into account. Both Nicole and Nolan Barras testified that, of the five children being homeschooled, Saul suffered the most. This was due to his age and schooling level. He was going into the fourth grade and Nicole Barras testified that there was a "jump in maturity" regarding "the amount of schoolwork." The jury noted this and awarded Saul Barras $1,500 – the most of the five children.

Silas and Manon are the two older Barras children. They were more self-sufficient and the testimony was that they were "back on track" as far as their

schooling.  The jury awarded them the least - $500 each.  Agnes and Lucy are the two youngest children and they were awarded $1,000 each.

Based on the evidence presented, we cannot say that the jury was manifestly erroneous in the children's loss of consortium awards.

## <u>CONCLUSION</u>

For the foregoing reasons, the damages awarded by the jury are amended and affirmed.  Costs of this appeal are assessed to Progressive Security Insurance Company and Fred Landry.

**AFFIRMED AS AMENDED.**